ISAAC VANDERVERE *v.* JOHN C. READING et al.

1. The court will not lend a willing ear to applications to permit answers to be amended, or to be taken from its files.

2. Where it is some mere matter of form sought to be corrected—a mistake apparent upon the face of the paper, which can be corrected without prejudice to the complainant, the objection is not so serious, and yet in such cases the court has always acted with commendable caution, never allowing it, except upon the condition that the defendant shall immediately, upon the corrections being made, reswear the answer; and it will never make such an order where the plaintiff can be at all prejudiced by it.

3. The court have, under some circumstances, allowed an answer to be amended in other respects than mere form. But no case can be found where a defendant has been permitted to take an answer absolutely off the file of the court and to substitute another in its stead.

4. With regard to reforming answers, the practice now is, not to permit an amendment of the answer filed, but to allow the defendant, upon a special application, setting out particularly the amendment, to file a supplemental answer. The court has never gone further than to permit a defendant to correct or add some single fact which had been mis-stated or omitted, through mistake, fraud or accident.

5. Where the defendant comes before the court by petition, under oath, and states the particulars in which he wishes to amend his answer, and the reason for asking the indulgence; and the petition shows that the answer was false from beginning to end, not in one or two facts, but in every fact, without an exception material to the issue; some of the most important of which he had sworn to two months previous. And the reason for asking the indulgence of the court is that the answer was drawn up by the solicitor of the complainant without the petitioner having any-one else to consult and advise with, and because the solicitor assured him that it was all right, and that he did not know that the facts reflected upon his character, and he was assured by his solicitor that they did not. The court will not grant the prayer of the petition.

Sydney Reading, one of the defendants, presented a petition, praying that he might be permitted to withdraw or amend, as the court should deem proper, the answer filed by him in this suit.

A copy of the petition was served upon the complainant, with notice of application. At the hearing it was offered, on behalf of the complainant, to read affidavits in answer to the petition. This was objected to as in violation of the rule requiring the affidavits to be taken on notice, or copies

served.    The objection was sustained, and the application was heard upon the petition only.

*James Wilson,* for petitioner, in support of the application, cited *Anonymous,* 1 *P. W.* 300; *Southcot* v. *Watson,* 3 *Atk.* 232 ; 2 *Danl. Ch. P.* 981 ; *Alpha* v. *Payman,* 1 *Dick.* 33 ; *Dagley* v. *Crump,* 1 *Dick.* 35 ; *Jennings* v. *Morton College,* 8 *Ves.* 79 ; *Wells* v. *Wood,* 10 *Ves.* 401.

*G. A. Allen* and *J. F. Randolph, contra.*

THE CHANCELLOR.   On the 18th day of November, 1852, Isaac Vandervere, the complainant, obtained a judgment in the Supreme Court against Sydney Reading, one of the defendants, for about three hundred and twenty-eight dollars. Upon the judgment, execution was issued, and a levy made on certain real estate of the debtor.   The real estate so levied on was encumbered to a large amount, and among other encumbrances was a mortgage of two hundred dollars, and another of one thousand five hundred and forty dollars, given by Sydney Reading to John G. Reading.   On the 13th day of May, 1851, Sydney confessed a judgment in the Supreme Court to John G. Reading, for the sum of one thousand nine hundred and eleven dollars.   On the 10th of May, 1852, Sydney confessed another judgment, to John G. Reading, in the Inferior Court of Common Pleas of the county of Hunterdon, for the sum of one thousand six hundred and thirteen dollars and fifty-eight cents.   By virtue of these several confessed judgments, levies were made by executions on the same real estate levied on under the complainant's judgment.

On the 7th of December, 1852, the complainant exhibited his bill of complaint in this court.   The bill charges the several judgments to John G. Reading to have been confessed and to be kept on foot, for the fraudulent purpose of defeating the lawful creditors of Sydney Reading, and particularly specifies the fraudulent manner in which they were contrived, and by which they have been managed, for the purpose of

accomplishing the alleged unlawful design of the parties thereto. ·

The bill is sworn to in the usual form by the complainant; that the facts, matters and things set forth in the bill, so far as they related to his own acts, are true, and so far as they relate to the acts and deeds of other persons, he believes them to be true.

To this bill is annexed the affidavit of Sidney Reading, one of the defendants, in which he swears specifically to the truth of the allegations of the fraud charged in the bill, and to several particulars constituting the fraud, and stating the same minutely and at length. This affidavit was sworn to on the second day of December, 1852, and the bill was filed on the seventh. On filing the bill, an injunction was issued to prevent James G. Reading proceeding under his judgments and executions.

On the 6th of January following, John G. Reading filed his answer, and on the 3d of February Sydney Reading filed his answer to the bill.

Sydney Reading answers the bill, very nearly, paragraph by paragraph. He admits every fact and circumstance, enlarging upon and explaining them with great particularity, which go to establish the frauds alleged in the bill. After the coming in of the answer, a motion was made to dissolve the injunction, which was refused. The cause was set down for hearing at the last term of this court, after which Sydney Reading filed his petition, under oath, praying for leave to take his answer from the file, or that he may amend the same, as the court shall deem most proper, and also that he may explain his affidavit annexed to the bill.

Let us examine as to what has been the practice of the court, and what is its policy, as to permitting answers to be amended, or to be taken from its file.

It is manifest, upon the slightest consideration, that as a matter of policy the court ought not to lend a willing ear to such applications. Where it is some mere matter of form sought to be corrected—a mistake apparent upon the face of the paper, which can be corrected without prejudice to the

complainant, the objection to permitting the answer to be taken from the file in order to correct such mistake, is not so serious; and yet in such cases, the court has always acted with commendable caution, never allowing it, except upon the condition that the defendant shall, immediately upon the correction being made, re-swear the answer; and it will never make such an order where the plaintiff can be at all prejudiced by it. 2 *Dan. Ch. P.* 344. · Where an answer is put in, so informal in its frame or form, or in the taking or filing it, that the complainant may treat it as a nullity, or take advantage of the irregularity by moving to take it off the file, yet in these cases even the court will not permit the defendant to take the answer off the file, except for the purpose of correcting the mistake, and upon the condition above referred to.

As will be seen, upon reference to the authorities, the court have, under some circumstances, allowed an answer to be amended in other respects than mere form. *Burney* v. *Chambers, Bumb.* 248; *Countess of Gainsborough* v. *Gifford,* 2 *P. Wms.* 424; *Giffiths* v. *Wood, Amb.* 62; *Patterson* v. *Slaughter, Amb.* 292; *Wells* v. *Wood,* 10 *Ves.* 401; *Chute* v. *Lady Dacre,* 1 *Eq. Ca., Ab.* 29; *Alpha* v. *Payman,* 1 *Dick.* 33; *Dagley* v. *Crump,* 1 *Dick.* 35. But no case can be found where a defendant has been permitted to take an answer absolutely off the file of the court and to substitute another in its stead. With regard to reforming answers, the practice now is, and it is the better practice, not to permit an amendment of the answer filed, but to allow the defendant, upon a special application setting out particularly the amendment, to file a supplemental answer. *Dolder* v. *Bank of England,* 10 *Ves.* 284; *Jennings* v. *Morton Coll,* 8 *Ves.* 79; *Wells* v. *Wood,* 10 *Ves.* 401; *Jackson* v. *Parish,* 1 *Sim.* 505; *Strange* v. *Collins,* 2 *V. and B.* 163; *Taylor* v. *Obee, S. Pri.* 83; *Ridley* v. *Obee, Wight* 32; *Tidswell* v. *Bowyer,* 7 *Sim.* 64; *Court* v. *Barr,* 2 *Mer.* 57; *Nail* v. *Punter,* 4 *Sim.* 474; *Curling* v. *Marquis of Townshend,* 19 *Ves.* 628. The practice, of course, does not apply to correcting of matters purely of form. *White* v. *Godbold,* 1

*Mad.* 269; *Peacock* v. *Duke of Bedford*, 1 *V.* and *B.* .186; *Woodyer* v. *Crumpton*, 1 *Fowl. Ex. Pr.* 379; *Ellis* v. *Saul*, 1 *Ans.* 332; *Lord Moncarter* v. *Braithwate*, 1 *Younge* 382.

There are, together with the cases cited, upwards of fifty authorities upon the matter of reforming answers; and yet it will be found that the court has never been willing to go further than to permit a defendant to correct or add some single fact which had been mis-stated or omitted through mistake, fraud or accident. In a note to *Livesey* v. *Wilson*, 1 *Ves. and Beam.* 157, there is a summary of the grounds, with the authorities, upon which the court has extended this indulgence to defendants. First, in small and immaterial matters. Second, where a mistake had crept into the engrossment. Third, where new matter has been discovered since the original answer was put in. Fourth, in cases of surprise. Fifth, in mistakes of names. But where the defendant mistook, first, the law; second, where the defendant had unintentionally perjured himself, and an indictment was suspended over him; and third, where, from the circumstance, that at the time of the answer put in, the defendant had not set forth his defence, from an inability to state it with precision, the court has refused him the indulgence of amending.

In the case of *Livesey v.* Wilson, the defendant had misstated a fact in reference to his possession of the property in question. On his affidavit, setting forth that the inaccuracy arose from his not before stating the fact to his solicitor; not conceiving it at all material to be introduced into his answer; and that it was not omitted by design or intention in any respect, but arose purely through ignorance. The Lord Chancellor said: " I am unwilling to make such a precedent, and consider this motion of such importance that I will not grant it, unless the defendant will tell me, on his oath, that, when he swore to his original answer, he meant to swear in the sense which he now desires to be at liberty to swear to; if he did not, I will not suffer him to avail himself of the fact as he now represents it." The court re-

quires, in making the application, the defendant should state specifically what he wishes to put on the record, in order that it may judge how far his application is reasonable, (*Curling* v. *Marquis of Townshend,* 19 *Ves.* 628,) and when it is new matter, sufficient reason must appear for not having it inserted in the original answer, (*Tennant* v. *Wilsmore,* 2 *Ans.* 362,) and the defendant must confine himself strictly to the correction of the mistake sworn to ; (*Strange* v. *Collins,* 2 *V. and B.* 163–167,) and, finally, the defendant must make such a case that it shall appear to be due to general justice, to permit the case already on record to be altered. *Wells* v. *Wood,* 10 *Ves.* 40.

All the English authorities will be found cited in 2 *D. C. P.* 199. The American authorities on the point are few. The views of Justice Stag, in the case of *Smith* v. *Balvcock et al.,* 3 *Sumner* 585, fully coincide with those expressed in the cases referred to. He remarks : " It seems to me that, before any court of equity should allow such amended answers, it should be perfectly satisfied that the reasons assigned for the application are cogent and satisfactory ; that the mistakes to be corrected, or the facts to be added, are made highly probable, if not certain ; that they are material to the merits of the case in controversy ; that the party has not been guilty of gross negligence, and that the mistakes have been ascertained, and the new facts have come to the knowledge of the party, since the original answer was put in and sworn to."

In the present case, the defendant comes before the court by petition, under oath, and states the particulars in which he wishes to amend his answer, and the reasons for asking the indulgence. The bill had charged that two judgments confessed by him were fraudulent. It set out a number of facts and circumstances going to establish the fraud. The answer of the petitioner admits the fraud, not in a general way, but in a most minute manner, and even to detailing circumstances, between himself and his co-defendant, going to establish the fraud. The petition shows that the answer was false from beginning to end, not in one or two facts, but

in every fact, without an exception, material to the question in issue. Some of the most important of these facts are the same he had sworn to two months previous, and placed upon the file of this court, in the form of an affidavit annexed to the bill. His reasons for asking the indulgence of the court is, that the answer was drawn up by the solicitor of the complainant, without the petitioner's having any one else to consult and advise with, and because the solicitor assured him that it was all right. How this can justify, or how excuse the petitioner in swearing to a state of facts one month, and in a most deliberate manner, after they are incorporated in an answer, re-affirming them with more particularity the next month, I cannot conceive. He does not pretend that the answer was not read to him, or that he did not understand every fact as it is set forth in the answer ; but he says that he did not know these facts reflected upon his character, and that he was assured by the solicitor that they did not. It amounts to this. He swore to the facts according to *advice* of counsel, and not according to his own *knowledge* of them. It is to be feared that this is too often the case. It is not so common to acknowledge it. In a case like this, it required no reference to authorities to show that the court ought not to grant the prayer of the petition. I did not have the least doubt about the question when it was presented ; and, therefore, it was without any reluctance that I annulled the application, on behalf of the complainant, to read affidavits, in answer to the allegations contained in the petition. Having the case before me, I have taken the opportunity to examine, as to the practice of the court, in permitting amendments to pleadings. I have been very much struck with the great carelessness and negligence of very many answers that I have been called upon to examine, and there is a looseness prevailing in this court on the draft of pleadings requiring to be sworn to, which ought not longer to be permitted, and which must, in some way, be discountenanced by the court.

The rules in reference to amendment of pleadings which have been put in under oath, may, at first view, appear too

Vandervere v. Reading et al.

stringent; but a little reflection will satisfy us of their propriety. It does not require a knowledge of the law, or of a parties' rights, to guard him against swearing to facts which are untrue. The facility with which affidavits are procured, and the readiness with which a party will swear to a statement of facts drawn up by counsel, are crying evils. How frequently does it happen that a complainant, in order to obtain an injunction, is guilty of an omission, which changes, altogether, the equity of the case, and which, he persuades himself, is less iniquitous and immoral than the actual statement of a fact which is untrue. Such a morality this court ought not to countenance; and I am sure that counsel who practice in this court would be unwilling to see it relaxing any of those wholesome rules, the object of which is to secure prudence and care in assuming the responsibility of an oath.

The prayer of the petition is denied, with costs.

CITED *in Huffman* v. *Hummer*, 2 *C. E. Gr.* 270, 271; *Burgin* v. *Giberson*, 8 *C. E. Gr.* 403; *Marsh* v. *Mitchell*, 11 *C. E. Gr.* 500.